Complaint by

Muhammad Murtaza Alam,

Pathology Resident.

V.

The Saint Louis University

# Complaint by

# Muhammad Murtaza Alam,

# Pathology Resident.

# V.

# The Saint Louis University

IN THE UNITED STATES DISTRICT COUTRT FOR

THE EASTERN DISTRICT OF MISSOURI

111 South 10th Street
St. Louis, MO 63102

Muhammad Murtaza Alam

1155 Mainstreet Valley Drive

Stone Mountain, GA 30088

Plaintiff/ PRO SE

    v.

COMPLAINT FOR

DECLARATORY,

RELIEFS FOR, DAMAGES,

ATTORNEY

FEES AND OTHER

EXPENSES

Defendants

President, Saint Louis University, hereinafter will be referred to as 'SLU'

Accredited Council for Graduate of Medical Education (ACGME).

(In compliance of Honorable EEOC letter dated 04-02-2026 regarding Charge 560-2026-01314 copy attached).

# INDEX

| S.NO | SUBJECT | PAGE |
|------|---------|------|
| 1 | BACKGROUND | 02 |
| 2 | NATURE OF THE ACTION | 03 |
| 3 | JURISDICTION AND VENUE | 04 |
| 4 | PARTIES | 05 |
| 5 | EXHAUSTION OF REMEDY UNDER EEOC | 05 |
| 6 | FACTUAL MATRIX | 05 |
| 7 | ADMISSION IN PATHOLOGY RESIDENCY | 06 |
| 8 | INITIAL OBSERVATION AND IMPACT | 07 |
| 9 | OVER WHELMING ISLAMOPHOBIA AND UNO | 07 |
| 10 | BEGINNING OF DISCRIMINATION | 08 |
| 11 | PLACING OF PLAINTIFF UNDER REMEDIATION IN REACTION TO ADVERSE SURVEYS REPORTS OF ACGME | 09 |
| 12 | PLAINTIFF'S CONTACT WITH ACGME STAFF LED TO HIS STIGMATIC TERMINATION WITHOUT ENQUIRY. | 09 |
| 13 | STUDENT HANDBOOK/TERMS AND CONDITIONS ARE SILENT ON REMEDIATION | 09 |
| 14 | INCONSISTENCY IN APPLICATION OF POLICIES | 12 |
| 15 | FACING OF DISCRIMINATION /IRREGULARITIES | 13 |
| 16 | PLAINTIFF'S LEGITIMATE EXPECTATIONS | 16 |
| 17 | VIOLATION OF NOTCE OF INTENT | 17 |
| 18 | ACGME DID NOT FULFILL ITS RESPONSIBILITIES | 18 |
| 19 | RESPONSIBLE FOR CREATING THREAT TO CAREER | 21 |
| 20 | CONDONATION OF DELAY, IF ANY | 24 |
| 21 | JURY TRIAL IS LEFT AT DISCRETION OF HONORABLE COURT | 24 |
| 22 | PLAINTIFF'S FINAL BIASED EVALUATION | 23,24 |
| 23 | PRAYER FOR RELIEF | 25-27 |
|   |   |   |
|   |   |   |
|   |   |   |

## COMPLAINT

### BACKGROUND

in the second decade of the 21si century, that the foundational principles i.e. the guarantee of equality enshrined in the Constitutions, both State and Federal, are continued to be disregarded particularly in the service matter. The present case exemplifies that how a Plaintiff experienced discrimination It is a matter of concern that most Americans would have believed unthinkable

based on protected

characteristics of religion, national origin, and retaliation, eventually, which led to the stigmatic termination of his services. The prevailing system where a litigant, is often placed at the margins, and he is compelled to traverse a prolonged and arduous legal journey merely to secure what is justly due. The suit is being instituted in view of a clear and unequivocal threat to the career development of the Plaintiff. Of course, now it is up to the honorable court to lift the veil and expose the reality. With due honor and hesitation, it may be added that parents having confidence over the successful educational career of the Plaintiff, were busy in arranging marriage of the Plaintiff, expecting completion of residency as per schedule which is normal in culture of origin but this shocking, arbitrary,

2 OF 27

capricious, unfair and discriminatory action on part of the SLU,  has upset the educational/professional career of the plaintiff besides obstructing to fulfill this societal obligation, specially where, source of income is only employment.

Particularly, it is more heart burning when Plaintiff's performance has been condemned and terminated without knowing the truth. The succeeding paragraphs will emerge other irregularities, which are not expected, from one of the top level educational institutions.

## 2.  NATURE OF THIS ACTION

Plaintiff Muhammad Murtaza Alam by and through his attorney (with due honor it is considered, pertinent to state that despite deficiency of financial wherewithal, efforts for attorney's services could not yet be proved fruitful probably for which Islamophobia may be the contributory factor besides location of trial because of Diversity , it is, therefore humbly prayed for arrangement of attorney in the interest of justice) brings this action under 42 U.S.C.§ §   1981, 1983, 1985, 1988,29 U.S.C.  201 and the United States Constitution for damages, and other legal and equitable reliefs from Defendants mentioned hereinafter for their engagement in unlawful discrimination, retaliation with conspiracy against the Plaintiff and have successfully achieved their unlawful purpose through stigmatic termination of the Plaintiff and have threatened  the career development of the Plaintiff.

3 of 27

Plaintiff presents numerous causes of action with regard to the discrimination based on protected characteristics, origin of national, religion and retaliation, which are clearly prohibited by federal laws as well as the United States Constitution and the States Constitutions.

### 3. JURISDICTION AND VENUE

i. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 be those claims are under the United States Constitution and laws of the United States and pursuant to 28 U.S.C.§1343(3) AND 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress under the declaratory judgment Statute conferred by 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 2000e et seq, as amended.

ii. The Court's supplemental jurisdiction over all non-federal claims arising from common nucleus of operative facts such that they form part of the same case or controversy under Art. III of the United States

iii. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/ or omissions giving rise to Plaintiff's claims occurred in the State of Missouri.

iv. Defendant maintains offices, conduct business and resides in this district.

## 4.   PARTIES.

Plaintiff is a person who has been aggrieved by the defendants as mentioned hereinbefore. He is and has been at all times, a citizen of the United States of America and a resident of Dekalb County, Georgia.

Defendants located at Saint Louis, with in the State of Missoui   upon information and belief.  The damages here are substantial as the Plaintiff has been wrongfully fired and has suffered physical, psychological, sociological and economical harm directly attributable to all defendants for their mistreatment and unlawful actions.

## 5. EXHAUSTION OF REMEDY UNDER EEOC

Plaintiff has already exhausted remedy available under the SLU, and the honorable Office of EEOC under  administrative law. In this regard Plaintiff has been issued a Notice of Right to Sue dated 4th April. 2026.

## 6. FACTUAL MATRIX

Succintly stated, facts relevant and essential for disposal of this Complaint are noted below:

i.      That during October,2019 Plaintiff applied for a Match in the pathology residency program of the Saint Louis University. Consequently, Plaintiff received an offer for interview with the Saint Louis University. Interview was held on November 20, 2019 (Attachment A)

ii.   Resultantly, SLU informed that the Pathology Residency Selection Committee, has voted to rank the Plaintiff as one of their top applicants vide letter dated 02/12/2020 (Attachment B)

iii.  Thereafter, Plaintiff was offered an appointment as a Graduate Medical Education Program Level 1 Trainee in the pathology residency program of the SLU School of Medicine vide letter dated 3/25/2020, for the period of 6/17/2020 through 6/30/2021(Attachment C).

iv.   In para 3 of the offer letter it was also mentioned that terms and conditions with regard to the Plaintiff are also described in attached material(Attachment C)

v.    Upon acceptance, the appointment was enforced for the period set forth 6/17/2020 to 6/30/2021 in the first paragraph of the appointment letter (Attachment C1).

vi.    That at the initial stage behavior of the following two respected professors was felt different than normally expected human relations as are laid down in the Code of Ethics for the Health Education Profession (Attachment D-D7) :

a) Emily Reiisenbichler, M.D.

b) Daniell H. Carpenter, M.D.

The above noted treatment was believed to be done, just because of Plaintiff's first name" Muhammad" which demonstrates a particular religion and was made easy victim of discrimination as further investigation is not required to ascertain religion. Honorable Court may be well aware that religious Islamophobia took a drastic leap into public awareness during the year 2020 and thereafter, unfortunately, when Plaintiff's residency started. With the explosive revelations about terrorist attacks mostly were associated with Islam by some quarters. Being over, whelming factor, the issue was placed before the UNO on September 24, 2021 by His Excellency P. M. of Pakistan (Attachment-E) The reality of the issue has further been corroborated by the latest judgment of the honorable Supreme Court of India, dated 29th April, 2026 relevant extract is reproduced below for the

ease of reference" 139. The Civil Appeal arising out of SLP(Civil) No.6913 of 2021 is directed against the final Orderdated22nd April, 2021……………………………………………………………

1……………………………………………………………………………… ………………………………………………………..

2. The second relief prayed for by the petitioner is for issuing a directive to the respondent N0.1 and 2 Central Government to restrain all on line social media network operating in India and not to carry out any ISLAMOPHOBIA posts or messages hurting or insulting the feelings of a particular community……………………….."

vii. That on 6/15/2021,the above noted respected professor Danielle, started discriminatory treatment by accusing the Plaintiff wrongly, for a case lost or delayed, just to cause harm in bad faith and to discourage the Plaintiff. This was informed to then dean faculty. (Attachment F-F2)

viii.  On the other hand, respected professor Emily, who is also program director apparently, subsequent to adverse feed back of routine surveys of March, 2021and March, 2022 or there about, by the Accredited Council for Graduate in Medical Education (ACGME) on 25TH July, 2022, a Notice of Intent was served upon Plaintiff, and the program director, placed the Plaintiff under remediation with instructions to improve performance by December 31, 2022 otherwise, Plaintiff will be placed under Institutional Probation, the next stage before termination. (Attachment-G-G2). Apparently, all this was being done under the impression that whatever is being done has the prior consent of respected dean faculty, Julie Gammick, M.D. it is pertinent to state that the word " Remediation " is not traceable neither in Student Hand Book (Attachment-H-H1)nor in Terms and Conditions of service. That the process contemplated by the program rendered the evaluation process cumbersome and unnecessarily burdensome upon the plaintiff. All this was done de horo the rule/against the principle of natural justice.

ix.  That in retaliation to Plaintiff's email dated 6/5/2023(Attachment-I)the then aforenoted program director made Final Evaluation of the Plaintiff on 6/26/23 (Attachment-J-J2). Instead of placing Plaintiff under Probation in

9 of 27

pursuance of Notice of Intent dated 07/25/2022(Attachment-G-G2) served upon the Plaintiff by the program director .The relevant extract is also reproduced for ease of reference:

" 1. Failure to complete this remediation process completely will result in a referral to the Office of Professionalism and placement on Institutional Probation. Probationary status will be reported to the ACGME.

2. Murtaza can appeal this plan and process to the GME Ombudsperson or DIO for mediation.

1. Failure to complete this remediation process will result in a referral to the Office of Professionalism and placement on Institutional Probation. Probationary be status will be reported to the ACGME.

2. Murtaza can appeal this plan and process to the GME Ombudsperson or DIO for

x.    Meanwhile, Plaintiff vide email dated 6/5/2023(Attachment I) requested Field Staff of ACGME, to provide some information pertaining to citation with regard to surveys which were also attended by the Plaintiff. Due to lack of knowledge and confidence, Plaintiff also informed the Field Staff that in reaction to bad surveys reports, program director has placed the Plaintiff

under remediation. Being origin of under developed country and in position of 'drowning man catches at straw ' besides lacking detailed procedural knowledge , Plaintiff also added to forward this request to the ACGME but it was denied by the Field Staff of ACGME.

xi.    That despite being well aware of biased attitude of aforesaid respected professors Emily and professor Danielle with regard to the Plaintiff, respected dean faculty did not intervene to stop them or include an impartial faculty member for evaluation of the Plaintiff. Consequently during February, 2023, first time Plaintiff was evaluated by both, professor Emily and professor Danielle in their respective subjects. Then after 10 to 15 days before the commencement of second time evaluation to ascertain/confirm their first decision regarding evaluation, Plaintiff requested both the professors to include dean faculty or any senior faculty member to ensure transparency being a matter of career development. But it was not heeded. In this way both of them violated a settled principle of law which states that no person be made judge of his own cause.

xii.    Meanwhile on 6/26/2023 Final Evaluation was made by the program director and Plaintiff's stigmatic termination was made by non renewal of

contract who has nothing adverse on his record before this unlawful termination(Attachment-J-J2). According to the Notice of Intent as stated in Para-ix above, in case of failure in remediation, Plaintiff was to be placed under Institutional Probation but he has been terminated. Therefore, compromising the requirement of Institutional Probation/neutrality and independence is intended to harass the Plaintiff besides denial of fairness. (Attachment-G-G2).Plaintiff also filed objection with regard to Final Evaluation vide email to GME dated 6/29/2023(Attachment-K-K1) but GME did not respond instead the stigmatic termination of the Plaintiff was made w.e.f. 6/30/2023(Attachment-J-J2) without conducting an inquiry to ascertain truth which amounts to denial of due process to the Plaintiff.

xiii. The residency program as stated earlier was closed without disclosing its reason and nothing about future course of action was told and the Plaintiff with origin of under developed country was left without any assistance from the program against its commitment made to the ACGME while obtaining accreditation to provide all assistance till completion of training by all the trainee. Also in the case in hand, apparently ACGME did not fulfill its responsibilities of intimating general public including Plaintiff the reason of

12 of 27

closing the residency program thereby the right to information for general public including the Plaintiff,

xiv.   is being violated because of continuing wrong as no corrective measures have been taken on its website.

xv.   Plaintiff had to suffer discrimination based on protected characteristics of religion, origin of national/race and retaliation, with regard to other residents of program who all have been promoted because they were considered superior to the Plaintiff in all respects.  The detail of other discriminatory treatment is as under from A to E below :

A. Plaintiff, once who was at top of the list as voted by the then Selection Committee,  was  served a' Notice of Intent 'dated 25th July, 2022(Attachment-G-G2) as aforesaid. It is surprising , that prior to said notice there is no warning or any other adverse remarks on record or any intimation to parents of the Plaintiff with regard to deteriorating of educational standard.

B. Plaintiff has been placed under' remediation' which is not yet part of the SLU's policy. At the moment, nothing is available in the Student Handbook (Attachment-H-H1) and Terms and Conditions provided by the SLU at the time of joining. It appears to be the case of first impression. In the absence of policy this action besides discriminatory is unlawful.

C. In accordance with said Notice of Intent, as a consequence of failure in remediation, Plaintiff was to be placed under Institutional Probation. But in this case Plaintiff had to face Stigmatic Termination instead to be placed under Probation(Attachment-G-G2).

D. There is inconsistency in application of policy. In the same program discrimination is evident where one resident of the same program, was placed under Probation because at present there is no policy with regard to placing resident under remediation and thereafter the aforesaid resident was promoted from Probation. But Plaintiff was harassed unnecessary by placing him under remediation instead of Probation and thereafter stigmatic termination was made by skipping Institutional Probation as per Notice of Intent and then program was closed without disclosing any reason(Attachment-L) and left the Plaintiff along with his parents and other family member to suffer from humiliation, physical, socio-psychological,

14 of 27

and economical stress as a consequence of this biased decision amounting to more than double jeopardy.

E. There were to be a complete enquiry before the termination as the reputation of the Plaintiff has been damaged besides denial of Constitutional rights of due process in addition to violating the right to live with dignity and honor.

F. According to Terms and Conditions(Attachment-M-M1) residents were to provide assistance till the completion of training but the Plaintiff was left without any assistance probably in the disguise of academic problem which has no legal standing in the absence of any prior written warning on record and presence of deception at any stage. The reason of closing the residency program is not yet known whether it has been closed by the SLU or by the ACGME, the veil will be lift in honorable Court amongst provision of other reliefs. That in all the above paras from A to F, again element of deception and discrimination is apparent, therefore, defendants have no clean hand to proceed further besides committing Continuing Wrongs.

xvi.   It may be also added that despite the post of program director was not a tenure post, under conspiracy Plaintiff was compelled to be evaluated by the

15 of 27

program director who holds two posts i. e. one as program director and the other is faculty member. Therefore, holding two incompatible post at same time is against the doctrine of incompatible offices because of risk of conflict of interest. It is a settled principle that what can not be done directly, it can not be done indirectly but settled law has been violated. However, perceiving the protest from other residents, program director was transferred any where else after achieving their unlawful purpose.

xvii.   That Plaintiff is of the belief that he can only be fired for a legitimate reason. If the residency has been closed due to financial problem, it is settled principle of law that paucity of fund does not defeat the legal right.

xviii.  That student mandate of the Plaintiff was withdrawn just to create hardship in seeking lawful assistance from colleagues/faculty to proceed against unlawful termination. That SLU has also violated the right to information for not providing relevant part of inquiry report keeping in view the privacy of the deceased resident who was a course mate of the Plaintiff and committed suicide during the period of same program director.

xix.    That Plaintiff has had legitimate expectation of completing 4 years of residency at the SLU but the aforenoted respected program director, Emily Reisenbichle respected professor Danielle H. Carpenter, and respected professor Lisa Israel, GME Student Affairs (who did not respond to the

email of the Plaintiff dated 6/29/2023) (Attachment-H-H1) and Plaintiff was terminated w. e. f. 6/30/2023,and the GME committed administrative laps in connivance with professor Julie Gammick and all the aforesaid professors got Plaintiff, declared unsuccessful in a deceptive manner and collectively caused threat to the career development of the Plaintiff. In fact all this discriminatory treatment was initiated because of first name ' Muhammad ' of the Plaintiff and which in turn, spread like ripples into Plaintiff's origin of national i.e. origin of poor country, and in retaliation of Plaintiff's contact with ACGME to seek some information about citation.

xx.    That services of the Plaintiff was terminated in violation of Notice of Intent. In fact Plaintiff was to be placed under Institutional Probation subsequent to failure in remediation but because of discrimination based on restricted characteristics of religion and national origin, and thereafter retaliation, the termination was made ex-facie stigmatic. In fact program director has violated her own aforesaid Notice of Intent whereby Plaintiff was to be

17 of 27

placed under Institutional Probation rather than terminated. (Attachment-G-G2)

xxi.    Responsibility Before Closing Residency Program

Under the terms and condition(Attachment-M-M1) it is responsibility of the program to ensure that the existing trainees must be allowed to complete their training or the program will assist the trainees in enrolling in AGCME accredited programs to continue their training. It is the absolute obligation of the SLU to secure the academic career of the trainee. Take an example of a common law country. Recently, on 14th May, 2026 the honorable Supreme Court of India delivered a significant judgment concerning the financial liability of 122 medical students who were transferred from a derecognized private medical college to other institutions after the collapse of the original college's regulatory approval. In the case of titled Soumya Ranjan Panda & ors v. Subhalaxmi Dash & ors, In this case when inspection was carried out, they revealed the existence of serious fundamental deficiencies in the defaulting institutions particularly in relation to infrastructure, availability of teaching facility and essential requirement mandated by law. But in the instant case SLU reports of previous two inspections have not been made public for the reasons better known to the respected Management of ACGME.

18 of 27

xxii..  That despite request of the Plaintiff, ACGME did not intervened being monitoring agency to save career of a well disciplined resident. It is believed that Plaintiff has been discriminated on the basis of protected traits of origin of nationality, and ACGME appears to be extending undue favor to SLU by suppressing the reason of closing the program. This would not happened, if my origin were from the United States, developed or oil rich country like other residents of the program.

xxiii.  That in fact lacking confidence at that point of time, Plaintiff could not request directly to ACGME. However, under the law, the information known to one part of an organization( the left hand) is considered, known to an other part of same organization (the right hand). If this principle, is valid for taxation cases, it is also applicable on other administrative agencies/organizations . Therefore, Plaintiff's email of June 5,2023 to Field Staff of ACGME is considered to have been received by the higher authorities of the ACGME(Attachment-N). If timely administrative action was taken, Plaintiff and whole of his family could have been saved from undue severe mental torture which is still continued.

xxiv. That SLU while ignoring balance of convenience have created hardship for the Plaintiff knowingly that it is unlikely for him to be accepted by any other institution for residency, with this unjustified stain to achieve my sacred goal, and

19 of 27

Defendant committed discrimination based on protected characteristics of origin of nationality, religion, and retaliation.

xxv.    That it is the trite law that decision of the appointing authority on the issue of recording reasons in writing on its satisfaction as to why SLU declared a resident on probation successful and another resident like Plaintiff, on remediation, has been terminated. This is discrimination on the basis of Protected characteristics based on origin of national i.e. all other residents have probably origin of developed world. (Attachment-G-G2)

xxvi.    That final evaluation(Attachment-J-J2) with rating of 3.55 indicates Plaintiff's performance below the Superior and above the Good. It means Plaintiff's performance in all the 11 Characteristics/Traits is Fair and above and this aspect holds further strength as Plaintiff was also rated Fair and above when he was rated Fair and above during a test conducted by the ACGME and obtain rating of 2.3(Attachment-O-O2). Therefore, mere on the basis of general statement that Plaintiff, did not successfully meet the expected milestone of training during remediation (which is itself not part of the  policy) is not sustainable. It should be specific with numerical grade.  As Plaintiff's performance is not Poor or not less than 2. Therefore, putting him under remediation is not sustainable and does not meet the parameters of justice.  A comparative statement of the performance of

20 of 27

residents of the program subject to forensic scrutiny besides remedial action with regard to administrative and legal irregularities may be helpful to reveal the truth.

xxvii. In view of the above, responsible defendants for creating threat to career development of the Plaintiff are from (a) to (e) below, are fastened with liability for their unlawful omissions and commissions based on protected characteristics of religion, national origin and retaliation besides their involvement, in accomplishing the civil conspiracy under the United States laws and caused all types of losses and damages :

> (a) ;ACGME is a  non-governmental organization. Its purpose is to accredit U.S. allopathic residency and fellowship programs. ACGME has the power to issue warning before withdrawal of accreditation for non compliance of committed requirements by the institutions. In this case ACGME did not fulfill its responsibilities to advise program director to follow educational activities in accordance with written terms and conditions provided to the residents. Plaintiff has been victim of humiliation for keeping him under remediation while there is no such written policy. In this regard ACGME and SLU both are liable for this negligence/violation amongst other.

21 of 27

.(b) President SLU, is over all responsible for the negligence and unlawful act of his agents. President SLU also set aside the written request of Plaintiff's parents, which they submitted pursuant to general belief that parenthood never ends.

(c) dean faculty(at relevant time) Julie Gammack, M.D. did not exercise its power to stop this unlawful stigmatic termination, to promote honesty and extended unlawful cooperation in creating threat for career development and enhanced the hardships of the innocent Plaintiff.

(d) program director (at relevant time) Emily Reisenbichler, M.D. is responsible for creating this ugali situation along with others for the SLU by hatching conspiracy by creating threat to career development of the Plaintiff and probably started discrimination because of my first name ' Muhammad ' as stated earlier and spread like cancer into other protected traits besides into retaliation of Plaintiff's contacts with ACGME Field Staff during their surveys for seeking information with regard to some citations.

(e) professor Danielle H. Carpenter, M.D.(at relevant time) who started unlawful discriminatory treatment on 6/15/2021(Attachment-F-F2) by alleging Plaintiff wrongly of case lost just to discourage the Plaintiff who is easily distinguished from other residents as his first name is ' Muhammad 'and thereafter became part and parcel of the then program director and others (6) Office of Graduate Medical

22 of 27

Education, GME(at relevant time), respected professor Lisa Israel, GME Student Affairs did not respond to Plaintiff's email dated 6/29/2023(Attachment-K-K1) with reference final evaluation dated 6/26/2023 and obstructed due process. (7) program director, pathology residency (present incumbent for presenting record.

xxviii. The detailed final evaluation where under plaintiff has obtained the rating of 3.55(Attachment-J-J2) and has been placed above the Good and below the Superior grades. It may be added that plaintiff was also declared with Fair grade by obtaining 2.3(Attachment-O-O2) in the test conducted by the Accredited Council For Graduate in Medical Education. As plaintiff has not obtained poor Grades in any of the trait, therefore, placing plaintiff under remediation is not sustainable. The detailed performance along with analysis is given below:

23 of 27

| Traits/Characteristics | Poor | Fair | Good | Superior |
|---|---|---|---|---|
| 1.Basic Medical Knowledge | | 2 | | |
| 2.History and Physical Examination N/A | N/A | | | |
| 3.Record Keeping and Case Presentation | | 2 | | |
| 4.Patient Management and Care | | 2 | | |
| 5.Professional Judgment | | 2 | | |
| 6.Physicain-Patient Relationship | | | 3 | |
| 7.Demostrated Responsibility and Ethical Conduct | | | | 4 |
| 8.Cooperativeness, Ability to work with others | | | | 4 |
| 9.Professional Appearance | | | | 4 |
| 10.Timely Communication with Health Care Team | | | 3 | |
| 11.Commitment to Continuous Learning and Practice Improvement | | | 3 | |
| 12.Ability to Practice in and Improve System of Care | | | 3 | |

xxix. In view of the above, it is also prayed to condone delay, if any, which is mainly due to lack of knowledge and inherent lack of confidence to face honorable courts as such aspects are not accorded due importance in education system of the Plaintiff's origin (i.e. Pakistan). Also as explained hereinbefore, it is again prayed to arrange attorney to proceed smoothly to save the precious time of the honorable Court.

xxx. In view of cause of action with regard to religion, it is left at discretion of the honorable Court, to proceed with Jury Trial or not to proceed with Jury Trial.

24 of 27

## PRAYER FOR RELIEF

a. Final Evaluation with Descriptive Rating of 11 traits which include as 4 Fair, 4 Good, 3 Superior and Poor Nil, thereby Defendant itself has made the Threshold of minimum 2. Therefore, rating of Plaintiff as less than 2 such that less than Fair in any Trait/characteristics, and all consequential results/decisions, be declared as untenable.

b. All damages which plaintiff have sustained as a result of Defendant's conduct, including back pay, front pay, benefits general and specific.

c. Awarding Plaintiff the cost and disbursement incurred with this action, including reasonable attorney's fees, expert witness fees and other cost.

d. In absence of policy on remediation, putting the Plaintiff under remediation and compromising Institutional Probation and putting Plaintiff, be declared as an arbitrary, capricious, unfair and has no sanctity in law and Plaintiff be granted promotion without any break like other successful colleagues of the same residency program.

e. Exemplary and punitive damages in an amount commensurate with defendant's ability so as to deter future malicious activities.

25 of 27

f.  Plaintiff be awarded retroactive seniority by placing the Plaintiff in the rightful position, a judiciously created relief with all the ancillary benefits preferably in the State of Georgia.

g.  The SLU be directed to disclose reasons for closing the residency program in compliance of Plaintiffs right to information and the right to life such that to live with dignity and honor

h.  The SLU be directed to take remedial measures in compliance with instructions of ACGME and who be directed to arrange reopening of the residency program to provide maximum facilities to ensure better standard of the SLU.

i.  Inaction on Plaintiff's email dated 29th June, 2023 with respect to objections filed on Final Evaluation of the Plaintiff, be declared as denial of the Due Process.

j.  Both, ACGME and the President SLU be directed to expunge all adverse remarks and actions to clear all the relevant record which had been made part of personal file of the Plaintiff as a consequence of biased and deceitful result, prepared by the program.

k.  President SLU be directed to mitigate all irreparable damages caused by its unlawful acts and to pay financial compensation to the Plaintiff, his parents and 02 (two) other family members living together for their continued

26 of 27

suffering from mental torture w.e.f. 06/26/2023 when final evaluation was made.

l.  All other reliefs as the honorable Court may deems appropriate under law and equity.

I, certify to the best of my knowledge, information, and believe that this complaint complies with the requirements of Rule 11 of FRCP.

Respectfully Submitted

*Zaetazen*

Muhammad Murtaza Alam

[Signature] Date:  06/23/2026